## THE CHICAGO & ALTON RAILROAD COMPANY

### v.

### LEONARD MATTHEWS.

*Master and Servant—Railroads—Negligence of—Personal Injuries—Viaducts—Car of Unusual Height—Evidence—Instructions.*

1. In an action brought to recover for personal injuries alleged to have been suffered by a servant through the negligence of his employer, a railroad company, this court holds, that in view of the giving of erroneous instructions touching the question of care and negligence upon the part of both parties, the judgment for the plaintiff can not stand.

2. In the case presented, this court holds that the jury should have been instructed to determine, from all the facts and circumstances in evidence, whether, under a fair and reasonable construction of all the rules offered in evidence, the plaintiff was in the line of his duty when injured, and if he failed to observe one of these rules, whether it was under such circumstances as would justify him in such failure.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of McLean County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. WILLIAM BROWN and WILLIAMS & CAPEN, for appellant.

Messrs. BENJAMIN & MORRISSEY, for appellee.

CONGER, P. J. Appellee is a young man twenty-four years of age. He commenced work as a regular brakeman on the Chicago division of appellant's road (from Chicago to Bloomington) in September, 1889, and continued until April 16, 1890, when he was hurt. Prior to that time he was employed by that company as a brakeman on other divisions and as a switchman.

At Joliet station, on the line of the road, are the works of the Joliet Steel Company, a private corporation. These consist of blast furnaces, rolling mills, boiler houses, smoke stacks

and other appurtenances used in the manufacture of the various kinds of steel products, with large grounds, in which are piled coke and other materials, and through which and between the buildings run the main tracks of the Chicago & Alton and the Santa Fe railroads, as well as a number of side tracks used for switching purposes in the night as well as day.

Across its main tracks, east and west, the appellant permitted the Steel Company to erect two viaducts or bridges, on each of which is constructed a railroad track, used only by the Steel Company for the transportation of materials from one part of the grounds to another. At the north one of the two, appellee was injured. It was nineteen feet ten inches from the rail of appellant's track to this viaduct. The bridge would easily clear a man standing on the ordinary cars of appellant, but was insufficient to clear a man standing on the top of unusually high cars. The bridge is approached by a curve from the south, the track over it being parallel with appellant's until within a short distance of the bridge, when the grade rises and curves to the bridge. No reason is apparent why the appellant did not require the Steel Company to place the bridge a sufficient height above the tracks, to clear its employes on all cars run over its road, before granting permission for the erection of a bridge it was under no obligation to consent to. The only explanation offered is the testimony of the superintendent of the Steel Works, who says: " It is already too high for convenience."

At the time appellee was injured it was very dark along the track of appellant through the Steel Mill yards, on account of the smoke, steam and dust caused by the operation of the works there, and the switching being done; so much so that appellee, though looking for the bridge, could not see it, and was unable to tell where he was with reference to it.

There was no signal, or warning of any kind, placed to apprise appellee of the location of the bridge, or of its height. The evidence shows that a customary signal for that purpose in use on appellant's road, was the erection of two poles, one on each side of the road, at a distance of 100 to 150 feet from the bridge, with a wire stretched between the

poles, over the track. From the wire are hung cords or straps, so hung that the lower ends of the straps shall be on a level with, or a little lower than the bridge, so that when struck by the straps an employe receives warning in time to avoid the bridge, that he is in danger of being struck by. ·It is claimed for appellee that the use of this simple and inexpensive signal, or the setting of a lamp at the level of the bridge, would have enabled him to avoid collision with the bridge, which in the darkness he was unable to see.

On April 16, 1890, appellee was called by the regular call boy, in the regular course of his business, to go from Brighton Park to Bloomington on a wild freight train—that is, one not on the time table as a regular train, but managed wholly by telegraph orders, having no "rights," but bound to keep out of the way of all regular trains and "look out for everything."

The train was composed of all through loads, and was made up by other servants of the company, under the direction of the train-master. A private car, marked "Menasha Woodenware Co.," one about three feet higher than the standard cars of appellant, was put in the train, and was the third forward of the caboose in a train of thirty or forty cars. In that position the rear brakeman was compelled to pass back and forth over it to perform his duty. It could have been placed in the middle of the train where neither brakeman would be obliged to cross it in the ordinary course. This was the first car of that make that appellee had seen. Appellant was in the habit of receiving foreign cars of different heights and make in the course of business at Chicago, and transporting them over its road.

Appellee was the rear brakeman on the train that proceeded on its way south, reaching the entrance of the Joliet yards about 10:10 P. M. At the whistling post, north of the crossing of the E. J. & E. R. R. and north of the Steel Mill, which point he recognized by means of a light on a semaphore signal beside the track, appellee left the caboose, went on top of the cars and commenced to set brakes, in obedience to the following rules of appellant: "All trains, except passenger trains,

must approach all stations, under complete control, *expecting to find the preceding train on the main track*, whether it may be a stopping place, as per table, for that train or not. Conductors of freight trains must see that their brakemen are on top of the train before reaching the whistling post, approaching and passing all stations." In addition to the rules above quoted, their train was followed by No. 4, which is the regular night express passenger train from Chicago to St. Louis. The passenger train was due in Joliet in a few minutes, and the freight train was so near on its time that it became the duty of the men in charge of the freight to take the side track, out of the way of the passenger. The bridge in question was a little more than a good train length from the connection where the train could back onto the side track, and was used by the trainmen as a "land mark," to reach the connection at the proper rate of speed.

Appellee continued to set brakes until the train was slowed down. To do that he was compelled to pass over the high car and set two to four brakes in front of it. This done he noticed the engine had started forward and was using steam. It then became his duty to release the brakes he had so set, to prevent the train being pulled in two, and in releasing the brake he was compelled to pass over the high car, climbing the upper steps of the side ladder, walking over it, and so down on the other end. He released the brake on the high car at its south end, then walked to its rear end, turned in a stooping position to look for the bridge, before climbing down. He was unable to see the bridge on account of the smoke and darkness and just after turning to look for it, was struck by the bridge, on the forehead, and knocked off the car. When found he was south of the bridge, in the the middle of the track over which his train had run. He was put on the caboose of the train which had backed through the connection out of the way of the passenger train, until it was very close to where he was found.

We think the judgment of the Circuit Court should be reversed because of error in the instructions.

The questions of fact disclosed by the evidence make the

question of reasonable care and negligence upon the part of both appellant and appellee a close one, and hence it was of the utmost importance that the jury should have been clearly instructed upon this question. Many of the instructions are too long, involved and complicated to give to the jury a clear understanding of the relative duties of the parties.

Some of them, too, give undue importance to certain facts by mentioning them and entirely ignoring all others in the case. Instruction No. 3 for appellee is especially obnoxious in this respect.

Appellee's sixth instruction is as follows:

" 6. The court instructs you that while the plaintiff was required to use reasonable care and diligence to comply with the rule of the company, yet in determining the question of what is reasonable care and diligence, you should take into consideration all the circumstances surrounding the plaintiff as shown by the evidence, and if you believe from the evidence that by reason of negligence on the part of the defendant, the plaintiff was, without fault on his part, prevented from complying with one or more of the rules offered in evidence, then you should find for the plaintiff, notwithstanding such failure to observe such rule, if you further believe from the evidence that the plaintiff, while in the exercise of reasonable care for his personal safety, was injured by or through carelessness or negligence of the defendant as charged in the plaintiff's declaration." There was no evidence that any negligence upon the part of the appellant prevented appellee from complying with the rules, and hence this instruction tended to mislead and confuse the jury.

The claim of appellee was that in going on the high car at the time he was struck, he was doing his duty; that he was in fact complying with the general spirit and tenor of the rules of appellant; that the rule requiring him to keep off of high cars, when near to bridges, was to be given a reasonable construction, so as to harmonize with others requiring him at certain times to be on top of the train.

It was this claim which appellee urged upon the jury, and not that appellant had been guilty of any particular act of

negligence that prevented appellee from complying with the rules.

The jury should have been told to determine from all the facts and circumstances in evidence whether, under a fair and reasonable construction of all the rules offered in evidence, appellee was in the line of his duty, and if he failed to observe one of these rules, whether it was under such circumstances as would justify him in such failure.

This was one of the vital points in the case and we are inclined to think this instruction directed the jury to determine it upon an erroneous hypothesis, and one not justified by the evidence.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*